IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| E.A.[1] | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 25-3268 |
| | : | |
| FRANK BISIGNANO, Commissioner of Social Security | : | |
| | : | |

**MEMORANDUM AND ORDER**

ELIZABETH L. TOPLIN, U.S.M.J. November 9, 2026

Plaintiff seeks review of the Commissioner's decision denying her applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and affirm the Commissioner's decision.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on January 19, 2023, alleging disability beginning on December 8, 2022. *Tr.* at 59-60, 233-44.[2] She claimed disability due to pain, numbness, and tingling as a result of nerve damage, and type II diabetes. *Id.* at 293. Plaintiff's applications were both denied initially on August 30, 2023, and then again on reconsideration on April 16, 2024. *Id.* at 90-108, 111-25. On April 27, 2024, Plaintiff requested an administrative hearing, *id.* at 126-27, which was held on November 19, 2024. *Id.* at 39-53. On March 17, 2025, the ALJ issued an unfavorable decision. *Id.* at 17-27. The Appeals Council

[1] Consistent with the practice of this court to protect the privacy interests of plaintiffs in social security cases, I will refer to Plaintiff using her first and last initials. *See* Standing Order – In re: Party Identification in Social Security Cases (E.D. Pa. June 10, 2024).

[2] To be entitled to DIB, Plaintiff must establish that she became disabled on or before her date last insured ("DLI"). 20 C.F.R. § 404.131(b). Here, the ALJ found, and the Certified Earnings Record establishes, that Plaintiff's DLI is September 30, 2027. *Tr.* at 19, 249.

denied Plaintiff's request for review on April 29, 2025, *id.* at 1-6, making the ALJ's March 17, 2025, decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

Plaintiff sought review in federal court on June 26, 2025, Doc. 1, and the matter is now fully briefed. Docs. 8-10. The case was originally assigned to the Honorable Caroline Goldner Cinquanto, and was subsequently reassigned to this Court. Doc. 11.[3]

## II. LEGAL STANDARD

The Court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *see Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff is not disabled. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court has plenary review of legal issues. *Schaudeck*, 181 F.3d at 431.

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner employs a five-step process, evaluating:

[3] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). See Standing Order – In re: Direct Assignment of Social Security Appeals to Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Doc. 15.

1. Whether the claimant is currently engaged in substantial gainful activity;

2. If not, whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities that has lasted or is expected to last for a continuous period of 12 months;

3. If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

4. If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform her past work; and

5. If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*See Zirnsak*, 777 F.3d at 610; *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience, and RFC. *See Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

## III. DISCUSSION

### A. ALJ's Findings and Plaintiff's Claims

In her March 17, 2025 decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since December 8, 2022, her alleged onset date. *Tr.* at 20. At step two, the ALJ found that Plaintiff had the severe medically determinable impairments of "chronic pain syndrome related to multiple abdominal surgeries and diabetes mellitus without complication[.]" *Id.* At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" *Id.* The ALJ found that Plaintiff had the residual functional capacity to perform "sedentary work . . . except the [Plaintiff] may occasionally stoop, crouch, kneel, climb

ramps/stairs, but never climb ladders/ropes/scaffolds. [Plaintiff] may occasionally operate foot controls. [Plaintiff] may have occasional exposure to hazards such as unprotected heights." *Id.* At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. *Id.* at 25. Based on Plaintiff's age, education, work experience, and RFC, a vocational expert ("VE") testified that Plaintiff could perform the jobs of final assembler, charge-account clerk, and order clerk. *Id.* at 26; *see also id.* at 49-53 (VE testimony). As a result, the ALJ concluded that Plaintiff was not disabled. *Id.* at 27.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly evaluate the supportability and consistency factors in considering Plaintiff's primary care physician's medical opinion. Doc. 8. Defendant responds that the ALJ properly considered the medical opinion of Plaintiff's primary care physician and the ALJ's decision is supported by substantial evidence. Doc. 9. Plaintiff has filed a Reply. Doc. 10.

**B. <u>Plaintiff's Claimed Limitations and Testimony at the Hearing</u>**

Plaintiff was born on July 8, 1987, and was therefore 35 years of age at the time of her alleged disability onset date, and 37 years of age at the time of the administrative hearing. *Tr.* at 233, 266. She completed two years of college in 2007. *Id.* at 294. Plaintiff's past relevant work is as a housekeeper in the hotel industry. *Id.* at 233.

At the administrative hearing, Plaintiff testified as follows. She suffers severe pain in her abdomen because of a past c-section. *Tr.* at 44. She is in constant pain when standing or sitting and estimated that she can only stand for three to five minutes before requiring a break. *Id.* She can barely carry any weight and needs assistance performing routine tasks, such as putting on her shoes, cooking, and fetching objects in the house. *Id.* at 45, 47. She cannot drive due to the pain, and her children and husband must perform errands outside the home for her, such as grocery shopping. *Id.* at 47.

On an average day, she is confined to the house and she must constantly lie down due to the pain she experiences. *Tr.* at 47-48. She can only lie down for an unspecified amount of time before she feels too much pain and must sit up or change position. *Id.* She cannot lie on her stomach due to the pain and must always lie on her side. *Id.*

Plaintiff explained that her pain is due to an internal injury, caused by the past c-section, that failed to heal. *Tr.* at 44. When her pain began, her medical providers prescribed gabapentin[4] and a "shot to block the nerve." *Id.* at 45. When those treatments were ineffective, Plaintiff underwent a course of physical therapy, which also did not alleviate her pain. *Id.* Her providers have recommended surgery to alleviate the issue. *Id.* at 45, 48.

A vocational expert ("VE") also testified at the administrative hearing and supplied written testimony pursuant to vocational interrogatories. *Tr.* at 49-53, 392-97. The hypothetical the ALJ posed at the hearing differs from that in subsequent vocational interrogatories and the ALJ's decision. *Compare id.* at 50 (hypothetical – "[T]hey should have **no exposure to hazards, such as unprotected heights** . . .") (emphasis added), *with id.* at 394 (interrogatory hypothetical – "They may have **occasional exposure to hazards such as unprotected heights**.") (emphasis added), *and id.* at 20 (decision – "They may have **occasional exposure to hazards such as unprotected heights**.") (emphasis added). Based on the hypothetical posed in the interrogatories, the VE testified that such an individual could not perform Plaintiff's past relevant work as a housekeeping cleaner. *Id.* at 393-94. However, the VE found that such an individual could perform the jobs of final assembler, sealer, electronics inspector, charge-account clerk, and order clerk. *Id.* at 50-51, 395. The normal tolerance for time off task would be 10 percent, and for absences, one day a month. *Id.* at 51. In addition, when the ALJ added the limitation that this

---

[4] Gabapentin is an anticonvulsant used to treat partial seizures, nerve pain, and restless legs syndrome. *See* https://www.drugs.com/gabapentin.html.

person would only have occasional use of both upper extremities or when the individual was unable to sit, stand, or walk for four hours out of an eight-hour workday, the VE testified that those limitations would be work preclusive. *Id.* When Plaintiff's counsel added the option to sit/stand at will, the VE testified that this limitation would be work preclusive. *Id.* at 51-52. Finally, the VE testified that it would be work preclusive if the individual needed to lie in the prone position while working, or could work only 15 minutes out of every hour. *Id.* at 52.

## C. Medical Evidence Summary

### 1. Treatment Providers

On December 21, 2021, Plaintiff presented to Lankenau Medical Center reporting decreased fetal movement. *Tr.* at 716.[5] Subsequently, it was confirmed that Plaintiff had suffered an intrauterine fetal demise, and a cesarean section surgery was performed. *Id.* at 716-17. During the procedure, the surgeon noted a "prior hysterotomy scar" that was "completely dehisced." *Id.* at 717.[6] The surgeon repaired the scar during the procedure. *Id.* Plaintiff attended postpartum follow-up appointments at Lankenau Medical Center on December 29, 2021, and January 26, 2022. *See id.* at 717-24. The first mention of abdominal pain appeared during the latter visit, where the medical provider noted that her incisional pain was "improving." *Id.* at 722.

On April 26, 2022, Plaintiff returned to Lankenau for a contraception management appointment with Joseph Elias Abdul-Malak, M.D. *Tr.* at 730-31. At the appointment, Plaintiff complained of uterine cramping, which she believed was caused by her Nexplanon[7] contraceptive implant. *Id.* at 730. Plaintiff reported to Dr. Abdul-Malak that she was

---

[5] Because Plaintiff's claims focus on the consideration of evidence related to her abdominal pain, I will confine this medical summary to the evidence relevant to that condition.

[6] Wound dehiscence occurs when a surgical incision fails to heal and re-opens after surgery. *See* https://my.clevelandclinic.org/health/diseases/wound-dehiscence.

[7] Nexplanon is a small plastic rod placed under the skin that contains etonogestrel, a hormone that helps prevent pregnancy. *See* https://www.drugs.com/nexplanon.html.

experiencing uterine cramping on "most days of the week." *Id.* Dr. Abdul-Malak prescribed Plaintiff ibuprofen and acetaminophen[8] to manage the cramping. *Id.* at 731.

On May 26, 2022, Plaintiff checked in to the emergency department at Temple University Hospital – Jeanes Campus, complaining of pain in her c-section incision site for two weeks. *Tr.* at 471-519. At this visit, Plaintiff described her pain as "sharp" with moderate severity. *Id.* at 478. Robert Bryan, M.D., described his examination results as "reassuring," and noted that Plaintiff was "not actually abdominal or pelvic tender." *Id.* at 483. Instead, the pain originated in the "soft tissues above the C-section scar" with a likelihood of "scar tissue type etiology." *Id.*

On June 1, 2022, Ramona Chube, M.D., saw Plaintiff at a Philadelphia city health center. *Tr.* at 653-55. At her appointment, Plaintiff again complained of abdominal pain. *Id.* at 653. Dr. Chube wrote that Plaintiff had experienced pain since her c-section and that the pain was "felt to be incisional." *Id.* Dr. Chube referred Plaintiff for a CT scan of her abdomen and pelvis. *Id.* at 654. Plaintiff obtained the CT scan from Lankenau Medical Center on June 15, 2022. *Id.* at 609-10. The CT scan results showed a ventral hernia measuring up to 9 mm. *Id.* at 610. Later notes interpreting this scan identified a "4 cm left adnexal cystic lesion that likely represented an ovarian cyst." *Id.* at 762.

Plaintiff's endocrinologist, Dina E. Green, M.D., mentioned in her August 4, 2022 treatment notes that Plaintiff had been experiencing "a great deal of abdominal pain" which had persisted for at least one month. *Tr.* at 613. Dr. Green further stated that Plaintiff had met with a general surgeon to discuss a surgical repair of her hernia. *Id.* The surgeon informed Plaintiff that

[8] Ibuprofen is a nonsteroidal anti-inflammatory drug used to reduce fever and treat pain or inflammation. *See* https://www.drugs.com/ibuprofen.html. Acetaminophen is an analgesic used for short-term pain relief. *See* https://www.drugs.com/acetaminophen.html.

her abdominal pain was "primarily neuropathic in origin rather than resulting from a hernia," and referred Plaintiff to pain management. *Id.* Dr. Green's notes mentioned that Plaintiff "has been unable to work at her usual job at the Loew's Hotel since May [2022]. She is chronically in a great deal of pain." *Id.* Plaintiff continued to take gabapentin with "limited relief." *Id.*

Plaintiff attended her first pain management office visit at Lankenau Medical Center with Soorena Khojasteh, M.D., on August 26, 2022. *Tr.* at 631-37. Plaintiff described her pain as constant and sharp, exacerbated by activity and lifting, and relieved by rest. *Id.* at 631-32. On physical examination, Dr. Khojasteh found full range of motion with "5/5 strength in all major muscle groups in upper and lower extremities bilaterally[.]" *Id.* at 635. Plaintiff exhibited a normal gait and required no assistive devices. *Id.* Dr. Khojasteh diagnosed Plaintiff with chronic pain syndrome and recommended a home exercise program and a transversus abdominis plane block (TAP)[9] procedure. *Id.* Plaintiff underwent this procedure on October 12, 2022. *Id.* at 637-39.

On November 1, 2022, Plaintiff attended another pain management appointment at Lankenau, this time with Rosalie Recto, PA-C. *Tr.* at 619-23. Plaintiff described her abdominal pain as sharp and constant, exacerbated by activity and lifting, and relieved by rest. *Id.* at 619. Plaintiff reported the pain to be a five out of 10 in severity. *Id.* Plaintiff reported no improvement in her symptoms following the TAP block procedure. *Id*. Plaintiff continued to take gabapentin daily, but she stated that it was ineffective. *Id.* On physical examination, PA-C Recto found Plaintiff to be in no acute distress. *Id.* Plaintiff had full range of motion and full strength in "all major muscle groups in upper and lower extremities bilaterally." *Id.* at 620.

---

[9] A TAP block is a procedure "performed with the goal of depositing local anesthetic in the neurovascular 'interfascial' plane between the internal oblique and transversus abdominis muscles." https://pain.ucsf.edu/fascial-plane-blocks/transversus-abdominis-plane-tap-block.

Plaintiff attended an appointment to establish care at Lankenau Medical Associates Internal Medicine with Mairin Haley, M.D., on May 18, 2023. *Tr.* at 790-803. Dr. Haley noted that Plaintiff had "abdominal wall pain at incision site since C-section in 2021" and she experienced a "superficial burning sensation along the incision which fluctuates in intensity" that is "worse when touching her skin." *Id.* at 791-92. Plaintiff continued to experience "[n]o significant relief from physical therapy, injections, or gabapentin." *Id*. at 791. On physical examination, Dr. Haley noted no acute distress or abdominal tenderness. *Id.* at 794-95.

On May 24, 2023, Katarina Smigoc, M.D., saw Plaintiff at the Lankenau Medical Center OB/GYN clinic for a consultation prior to imaging for abdominal distention. *Tr*. at 761-65. Dr. Smigoc noted no abdominal pain, but she found that Plaintiff had "chronic pain of her c-section incision, [that] has not been aggravated by [Plaintiff's] distention." *Id.* at 761. Plaintiff appeared alert and in no acute distress. *Id.* at 763. On physical examination, Dr. Smigoc noted no abdominal tenderness "except for cs scar." *Id.*

On June 8, 2023, Plaintiff returned to Lankenau for a gastroenterology appointment with Andrew Stephen Bensinger, D.O. *Tr.* at 807-11. At this visit, Plaintiff denied abdominal pain. *Id.* at 808. Dr. Bensinger's physical examination revealed no acute distress or abdominal tenderness. *Id.* at 809.

Plaintiff attended a follow-up appointment at Lankenau Internal Medicine to address gastroesophageal reflux disease ("GERD")[10] with Carly Marie Weber, D.O., on January 29, 2024. *Tr.* at 1021-51. Plaintiff reported that she had been unable to work due to her abdominal pain, and that she planned to start "the process for medical marijuana." *Id.* at 1033. Plaintiff continued taking gabapentin and lidocaine for her abdominal pain, with limited relief. *Id.*

---

[10] GERD occurs when stomach acid flows up into the esophagus and causes heartburn. *See* https://www.mayoclinic.org/diseases-conditions/gerd/symptoms-causes/syc-20361940.

On February 13, 2024, Plaintiff checked in to the emergency department at Lankenau Medical Center for "exacerbation of pain from her C-section scar." *Tr.* at 1065. Plaintiff reported a "very intense" pain that felt like a "knife cutting the skin." *Id.* John W. Berry, M.D., performed a physical examination. *Id.* at 1065-67. Dr. Berry noted no acute distress and no abdominal tenderness or guarding. *Id.* at 1066-67.

Plaintiff returned to Lankenau Internal Medicine on February 22, 2024, and met with Michael Galperin, D.O., to manage medication following a new pregnancy. *Tr.* at 1111-43. During this visit, Plaintiff noted that her abdominal pain was stable. *Id.* at 1126. On physical examination, Dr. Galperin noted "tenderness to palpation over c-section scar." *Id.* at 1129.

Plaintiff followed up at Lankenau Internal Medicine for an appointment with Deepa Chellappa, M.D., on May 6, 2024. *Tr.* at 1143-58. Dr. Chellappa noted no pain improvement with gabapentin and injections and stated that the pain "is at its worst with certain activities like bending over or lifting." *Id.* at 1145. Physical examination revealed a "distended abdomen with tenderness to palpation along the lower abdomen at the location of her C-section scar." *Id.* at 1146.

On August 8, 2024, Plaintiff returned to Lankenau for a CT scan of her abdomen to address her ongoing complaints of pain. *Tr.* at 1308-12. The CT scan showed separation of Plaintiff's rectus abdominis muscles. *Id.* at 1313. At a follow-up appointment on August 12, 2024, Dr. Chellappa discussed surgical intervention with Plaintiff, which Plaintiff did not wish to pursue. *Id.*

On September 9, 2024, Plaintiff met with Dr. Chellappa, Allison Thompson, M.D., and Nicole Salva, M.D., to discuss her chronic abdominal pain. *Tr.* at 1322-30. The providers referred Plaintiff to osteopathic medicine, as well as a re-evaluation by general surgery for repair

of her diastasis recti. *Id.* at 1323. At the meeting, Plaintiff expressed frustration that no recommended treatment had relieved her abdominal pain. *Id.*

The record contains two opinions from Dr. Chellappa, Plaintiff's primary care physician. First, in a letter dated June 25, 2024, Dr. Chellappa opined that Plaintiff suffered from refractory abdominal pain which limited her ability to work. *Tr.* at 983. Due to this pain, Plaintiff needed to frequently modify positions, and Plaintiff could not stand, sit, or ambulate for long periods of time. *Id*. Second, on November 8, 2024, Dr. Chellappa provided a primary source statement. *Id.* at 1334-41. The doctor characterized Plaintiff's pain as a "severe midline lower sharp abdominal pain exacerbated by prolonged seated/standing positions and physical exertion." *Id.* at 1334. Dr. Chellappa opined that Plaintiff was able to tolerate low-stress jobs, "limited by physical conditions and pain." *Id.* at 1335. Plaintiff could sit/stand for five minutes at a time, and for less than two hours total in an eight-hour workday. *Id.* at 1335-36. She could walk one city block before requiring rest. *Id.* at 1335. Plaintiff would require a job that allowed her to shift positions at will, and that allowed for unscheduled breaks every 30 minutes for 10 to 15 minutes at a time. *Id.* at 1336. She could never be required to lift any amount of weight in a competitive work situation. *Id.* Plaintiff could never be required to twist, stoop, crouch/squat, or climb ladders. *Id.* at 1337. She could only rarely be required to climb stairs. *Id.* During an eight-hour workday, Plaintiff could use her fingers to perform fine manipulations at all times, but only during half of the workday could she grasp, turn, or twist objects with her hands. *Id.*

2. Consultative Examiner and State Agency Medical Consultants

On March 7, 2024, Plaintiff was examined by consultative nurse practitioner Vanessa Regis ("NP Regis") with complaints of type II diabetes, neuropathy, and abdominal pain. *Tr.* at 992-1009. Upon physical examination, NP Regis found that Plaintiff's abdomen was non-tender. *Id.* at 995. Plaintiff appeared to be in "no acute distress," with normal gait, no difficulty walking

on toes and heels, inability to squat, and difficulty getting up and out of the chair, and on and off the exam table. *Id.*

Based on her examination of Plaintiff, NP Regis opined that Plaintiff experienced abdominal nerve pain. *Tr.* at 998. She could occasionally lift and carry up to 10 pounds but could never lift and carry greater than 10 pounds. *Id.* Plaintiff could sit for two to three hours without interruption, and for three to six hours total in an eight-hour workday. *Id.* at 999. She could stand and walk for one to two hours in an eight-hour workday in 80-minute increments. *Id.* NP Regis found that Plaintiff could never be exposed to unprotected heights, and could occasionally be exposed to moving mechanical parts, humidity and wetness, extreme cold, extreme heat, and vibration. *Id.* at 1002. NP Regis also found that Plaintiff could occasionally operate a motor vehicle, and frequently be exposed to dust, odors, fumes, and pulmonary irritants. *Id.* She could perform manipulative activities occasionally bilaterally. *Id*. at 1000. Plaintiff could occasionally operate foot controls. *Id*. She could never use ladders, but could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. *Id.* at 1001.

At the reconsideration stage, on April 15, 2024, Kevin Scott Hollick, D.O., found that Plaintiff could occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds, sit for about six hours, and stand/walk for about six hours in an eight-hour workday. *Tr.* at 71.[11] Dr. Hollick found that Plaintiff could frequently stoop, without other postural limitations. *Id.* The doctor found Plaintiff had no manipulative or environmental limitations. *Id.* Based on this assessment, Dr. Hollick found that Plaintiff could perform sustained medium exertion work. *Id.* at 73.

[11] At the initial consideration stage, State Agency consultant Gaye Christina Gustitus, D.O., completed her review of Plaintiff's records. *Tr.* at 64. Dr. Gustitus did not opine on Plaintiff's physical limitations because there was "insufficient evidence to assess the claimant's allegations of nerve damage, pain, numbness and tingling because the evidence needed for a full medical evaluation is not available." *Id.* The ALJ did not discuss Dr. Gustitus's report because it contained "no residual functional capacity assessments or other relevant opinions." *Id.* at 24.

**D. Analysis**

Plaintiff's claim focuses on the ALJ's consideration of medical opinion evidence. Plaintiff argues the ALJ erred in evaluating Dr. Chellappa's opinion because the ALJ "failed to properly explain the supportability and consistency factors," Doc. 8 at 3, characterizing the ALJ's discussion of the factors in evaluating Dr. Chellappa's opinion as "cursory." *Id.* at 6. Defendant responds that the ALJ properly addressed the supportability and consistency factors, and therefore the ALJ's findings were reasonable and supported by substantial evidence. Doc. 9 at 3-6.

The ALJ's consideration of medical opinion evidence is governed by regulations that focus on the persuasiveness of each medical opinion:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

20 C.F.R. §§ 404.1520c(a), 416.920c(a). The regulations list the factors to be used in considering medical opinions: supportability, consistency, treatment relationship (including the length and purpose of the treatment and frequency of examinations), specialization, and other factors including familiarity with other evidence in the record or an understanding of the disability program. *Id.* §§ 404.1520c(c), 416.920c(c). The most important of these factors are supportability and consistency, and an ALJ is specifically required to explain these factors but is not required to discuss the others. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The regulations explain that supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). In addition, consistency means "[t]he more consistent a medical opinion(s) . . . is

with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

In her explanation, the ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). Instead, it is acceptable to "weave supportability and consistency throughout her analysis of which doctors were persuasive." *Id.* "[Because] the regulations seek to enforce a 'source level' analysis, rather than dividing each source's opinions into different units to be separately analyzed," the ALJ is not required to analyze supportability and consistency "with regard to every aspect of the [doctor's] opinion." *Pyle v. Comm'r of Soc. Sec.*, No. 23-815, 2024 WL 4278291, at *1 n.1 (W.D. Pa. Sept. 24, 2024). Instead, the regulations reflect a "reasonable articulation standard" that "will allow a subsequent reviewer or a reviewing court to trace the path of an adjudicator's reasoning[.]" *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017). As a result, the ALJ is not required to provide a "written analysis about how [she] considered each piece of evidence." *Id.* When there is a conflict in the evidence, the ALJ may choose which evidence to credit and which evidence not to credit, so long as she does not "reject evidence for no reason or for the wrong reason." *Rutherford*, 399 F.3d at 554; *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)).

1. **Supportability**

Plaintiff first argues the ALJ's supportability analysis with respect to Dr. Chellappa's opinion was not sufficient because the ALJ "failed to provide any discussion of the more detailed records that supported [Dr. Chellappa's] opinion." Doc. 8 at 6. Plaintiff claims that, without a more detailed discussion of the record, the ALJ's supportability analysis was "largely cursory and failed to build a logical bridge to the ALJ's conclusions." *Id.* at 8. In support of her claim,

Plaintiff cites various treatment notes, including, *inter alia,* findings from Dr. Chellappa's examinations noting Plaintiff's distended abdomen with tenderness to palpation and stating Plaintiff's abdominal pain is worse when bending or lifting. *Id.* at 6-7.

The Court disagrees and finds the ALJ's discussion of the supportability factor sufficient. As an initial matter, Plaintiff's citations to the record do little to support her argument. While some statements cited by Plaintiff were not explicitly discussed by the ALJ in her evaluation, an ALJ is not required to provide a "written analysis about how [she] considered each piece of evidence." 82 Fed. Reg. at 5858. In addition, an ALJ is not expected to "'make reference to every relevant treatment note in a case,' . . . and the cherry-picking of unmentioned details from a voluminous record" does not render a plaintiff's claim viable. *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 162 (3d Cir. 2016) (quoting *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001)). Here, the ALJ provided a detailed summary of Plaintiff's relevant medical history before her analysis of Dr. Chellappa's opinion. *See tr.* at 22-25. This was sufficient, as an ALJ is not required to explicitly discuss every piece of evidence she considered when analyzing the persuasiveness of a medical opinion. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (explaining that the ALJ need only provide a "'discussion of the evidence' and an 'explanation of reasoning' for [her] conclusion sufficient to enable meaningful judicial review.") (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000)); *see also Serrano v. Kijakazi*, No. 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("In this case, the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness of the medical opinions . . . . The ALJ was not required to repeat this information for the sake of elaborating on her findings of persuasiveness."). Plaintiff's argument also conflates diagnosis with disability which "incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does

not establish entitlement to benefits under the Act." *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004). Regardless, the ALJ's discussion of supportability is sufficient because the ALJ noted a lack of objective medical evidence supporting the degree of limitations assessed in Dr. Chellappa's opinions.

As noted earlier, Dr. Chellappa provided two opinions concerning Plaintiff's functional limitations: the June 25, 2024 letter, and the November 8, 2024 primary source statement. *Tr.* at 983, 1334-41. Dr. Chellappa's letter stated that Plaintiff had "a history of chronic abdominal pain . . . ." and that she "frequently needs to modify positions in order to prevent exacerbations of pain and is not able to sit, stand or ambulate for long periods of time due to her pain." *Id.* at 983. Dr. Chellappa's primary source statement characterized Plaintiff's pain as a "severe midline lower sharp abdominal pain exacerbated by prolonged seated/standing positions and physical exertion." *Id.* at 1334. In a section on the primary source statement form prompting Dr. Chellappa to "identify the clinical findings and objective signs," Dr. Chellappa wrote only "CT scan with evidence of diastasis recti." *Id.* Dr. Chellappa's resulting functional limitations were highly restrictive. *See id.* at 1335-36 (finding Plaintiff could only sit or stand five minutes at a time and that Plaintiff could never be required to lift any amount of weight in a competitive work situation).

The ALJ found Dr. Chellappa's opinions unpersuasive due to a lack of objective medical evidence supporting the restrictive degree of Plaintiff's functional limitations. In evaluating supportability, the ALJ found Dr. Chellappa's letter opinion to be "not supported by any examination findings or specific description of medical evidence. . ." *Id.* at 24. Regarding supportability of the doctor's primary source statement, the ALJ found that Dr. Chellappa "supported this opinion by referencing chronic abdominal pain, recurrent miscarriages, and hepatitis B, however, [Dr. Chellappa] wrote that [Plaintiff's] only symptom is pain which does

not support the degree of limitation assessed." *Id.* at 25. The ALJ specifically explained that while she found "claimant's pain consistent with a range of sedentary work, nothing in the record supports the need for breaks, sitting and standing limitations, or restriction in the use of upper extremities opined by Dr. Chellappa." *Id.*

Dr. Chellappa's own treatment notes do not support the extremely restrictive functional limitations assessed. A review of the record shows that Dr. Chellappa's physical examinations of Plaintiff contained largely normal findings. *See tr.* at 1146, 1204, 1275 (noting no acute distress); *see also id.* at 1146, 1275, 1314 (noting only c-section scar tenderness). While the August 2024 CT scan referenced by Dr. Chellappa did confirm a separation of Plaintiff's rectus abdominis muscles, *id.* at 1313, this diagnosis alone is not sufficient to support the highly restrictive limitations articulated. *See Phillips*, 91 F. App'x at 780 ("A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act."). The Court therefore finds the ALJ's supportability analysis of Dr. Chellappa's medical opinions sufficient. *See Smith v. Bisignano*, No. 25-827, 2026 WL 2393239, at *3 (M.D. Pa. Aug. 17, 2026) (finding ALJ's decision supported by substantial evidence where provider failed to support their medical opinion with "clinical findings," instead "relying. . . solely on [plaintiff's] subjective symptoms").

2. **<u>Consistency</u>**

Plaintiff next argues that the ALJ made errors in discussing the consistency factor when evaluating Dr. Chellappa's opinions. Doc. 8 at 8. Specifically, Plaintiff claims that the ALJ's discussion of the consistency factor was insufficient because, in discussing consistency, the ALJ "only generally compared [Dr. Chellappa's opinion] to examination[s] without providing an explanation or citation to those findings." *Id.* In support of her argument, Plaintiff cites to a selection of treatment records from her longitudinal record that she believes are consistent with Dr. Chellappa's opinion. *See id.* at 8-9. For example, Plaintiff cites to treatment records noting,

*inter alia*, that she was diagnosed with "chronic pain syndrome" and that she was experiencing "abdominal pain, lower quadrant pain, and constant pain." *Id.* at 8. Plaintiff also cites to NP Regis's examination findings to further the proposition that Dr. Chellappa's opinion was consistent with the longitudinal record. *Id.* at 9.

The Court finds Plaintiff's argument in this regard to be unpersuasive. As with Plaintiff's supportability argument, Plaintiff does little but cite selections of the record to further the proposition that the ALJ's discussion of consistency as required by 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) was insufficient. As above, Plaintiff's argument conflates diagnoses with evidence of functional limitation, and diagnoses by themselves without evidence of functional limitation "do[ ] not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)). Even so, the ALJ's discussion of the consistency factor was sufficient such that the ALJ's conclusion is supported by substantial evidence.

In evaluating the consistency of Dr. Chellappa's letter opinion, the ALJ found the opinion "not consistent with other evidence in the record, particularly exam findings by the consultative examiner." *Tr.* at 24. Regarding the primary source statement, the ALJ found the opinion unpersuasive because the opinion was "not consistent with other evidence of record which contains generally normal physical examination findings including full strength, reflexes, and sensation and minimal impairments in range of motion." *Id.* at 25.

Indeed, a review of the record supports the ALJ's conclusions because Dr. Chellappa's limitations are not consistent with the longitudinal medical record containing relatively normal physical examination findings. For example, physical examinations performed after Plaintiff's c-section note that Plaintiff had full range of motion and full strength in both upper and lower extremities. *See id.* at 635, 642, 837, 1204. Plaintiff's gait was noted to be normal. *See id.* at 635,

642, 995. Plaintiff was also observed to be in no acute distress during these examinations. *See id.* at 634, 642, 763, 778, 784, 794, 809, 837, 995, 1066, 1204. The ALJ also noted in her decision that Plaintiff "rarely" experienced abdominal tenderness. *Id.* at 23. The Court disagrees with this characterization, as the record contains several instances of noted abdominal tenderness, with some providers specifying that the tenderness originated from Plaintiff's c-section scar. *See id.* at 479, 763, 967, 1129, 1204, 1275. Even so, this mischaracterization is harmless because the record contains just as many instances where physical examination notes reflect no abdominal tenderness. *See id.* at 722, 778, 784, 795, 809, 895, 936, 940, 995, 1067. The existence of this conflict is enough to lend support to the ALJ's conclusion that Dr. Chellappa's opinion is inconsistent with the record. *See Plummer*, 186 F.3d at 429. These inconsistencies, taken as a whole, are enough to find the ALJ's consistency analysis sufficient, and her decision supported by substantial evidence. *See Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) ("The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision.").

Moreover, NP Regis's physical examination findings do not lend support to Plaintiff's argument because Dr. Chellappa's opinion is more restrictive than, and therefore inconsistent with, NP Regis's opinion. Upon examination, NP Regis noted no acute distress, no abdominal tenderness, normal gait, no muscle weakness, and normal range of motion except a small restriction in lumbar flexion-extension. *Tr.* at 992-1007. NP Regis concluded that Plaintiff could "occasionally lift and carry up to 10 pounds." *Id.* at 998. By contrast, Dr. Chellappa concluded that Plaintiff could never lift or carry weight in a work situation. *Id.* at 1336. NP Regis also found that Plaintiff could sit for three to six hours total in a workday for two to three hours at a time and could stand and walk for one to two hours total in a workday in 80-minute intervals. *Id.*

at 999. This conclusion was inconsistent with Dr. Chellappa's opinion, which stated that Plaintiff could only sit or stand for five minutes at a time and for less than two hours total in an eight-hour workday. *Id.* at 1335-36.

In evaluating NP Regis's functional assessment, the ALJ found NP Regis's opinion persuasive "to the extent that it limits [Plaintiff's] pain to a range of sedentary [work] which . . . is consistent with the overall record including [Plaintiff's] reports of pain." *Tr.* at 24. The ALJ found NP Regis's opinion unpersuasive to the extent that it contained "manipulative limitations, degree of postural limitations, environmental limitations, and activity limitations" that were not supported by NP Regis's "essentially normal" physical examination findings. *Id.* The Court agrees that NP Regis's conclusions are largely consistent with "sedentary work" as defined by the regulations, *see* 20 C.F.R. §§ 404.1567(a), 416.967(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" and "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."), and contradict Dr. Chellappa's more restrictive functional limitations assessment.

Because Dr. Chellappa's opinion regarding Plaintiff's functional limitations is inconsistent with other evidence in the longitudinal medical record, the Court finds the ALJ's analysis of the consistency factor to be sufficient and supported by substantial evidence. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Debevits v. Saul*, No. 20-600, 2021 WL 2590140, at *4 (W.D. Pa. June 24, 2021) (finding that the ALJ did not err when concluding a medical provider's opinion was not persuasive because "the limitations he espoused were not consistent with or supported by other evidence of record" where the records "indicated a greater ability to walk, lift, and stand"); *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding the ALJ properly evaluated medical opinions regarding

plaintiff's limitations where the ALJ considered, *inter alia*, physical examinations that consistently noted the plaintiff's normal range of motion, lack of tenderness, normal gait, and full strength); *Aponte v. Kijakazi*, No. 20-5008, 2021 WL 4963545, at *7 (E.D. Pa. Oct. 25, 2021) (finding that substantial evidence supported the ALJ's finding that a treating opinion was not persuasive because it was inconsistent with, *inter alia*, mild findings on "multiple physical examinations").

## IV. CONCLUSION

The Court is not persuaded that the ALJ failed to adequately explain the supportability and consistency factors required of her by 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) in reaching her determination. For this reason, the Court finds that the ALJ's decision is supported by substantial evidence.

An appropriate Order follows.